**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JENNIFER FROST et al.,

          Plaintiffs,

vs.

CITY OF SIOUX CITY, IOWA et al.,

          Defendants.

No. 16-CV-4107-LRR

**ORDER**

---

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*    *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*   *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . . **3**

*IV.*   *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*V.*    *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

       *A.*     *The Ordinance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
       *B.*     *Plaintiffs.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
            *1.*     *Kali Myers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
            *2.*     *Jennifer Frost* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
            *3.*     *Jane Doe* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
       *C.*     *Plaintiffs' Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

*VI.*   *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

       *A.*     *Standing of Plaintiffs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
            *1.*     *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
            *2.*     *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
            *3.*     *Injury in fact* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

           *a.*     *Subject to ordinance* . . . . . . . . . . . . . . . . . . . . . . . **9**

           *b.*     *Dogs are property* . . . . . . . . . . . . . . . . . . . . . . . **11**

    **4.**     *Favorably redress the injury.* . . . . . . . . . . . . . . . . . . . **13**

    **5.**     *Ripeness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

    **6.**     *Standing established.* . . . . . . . . . . . . . . . . . . . . . . . . **15**

**B.**    **Procedural Due Process Claim Standing** . . . . . . . . . . . . . . . . . . . **15**

**C.**    **Mootness of Kali Myers' Claims** . . . . . . . . . . . . . . . . . . . . . **16**

**D.**    **Failure to State a Claim for Which Relief Can Be Granted** . . . . . . . **17**

    **1.**     *Substantive due process.* . . . . . . . . . . . . . . . . . . . . . . **17**

           *a.*     *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

           *b.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

    **2.**     *Equal protection* . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

    **3.**     *Vagueness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

           *a.*     *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . **21**

           *b.*     *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

           *c.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

**E.**    **Abstention** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

    **1.**     *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . **23**

    **2.**     *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

    **3.**     *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

**VII.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

## I. INTRODUCTION

The matter before the court is Defendants City of Sioux City, Iowa ("City"), Robert Padmore and Cindy Rarrat's "Motion to Dismiss and Motion to Abstain" ("Motion") (docket no. 23).

## II. PROCEDURAL HISTORY

On December 2, 2016, Plaintiffs filed an Amended Complaint (docket no. 18) asserting that the City had violated their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. On December 30, 2016, Defendants filed the Motion. On January 13, 2017, Plaintiffs filed a Resistance (docket no. 26). Defendants have not filed a Reply and the time for doing so has passed. Defendants have requested oral argument, but the court finds that oral argument is

unnecessary. The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over Plaintiffs' claims because they arise under the United States Constitution. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal on the basis of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "To establish constitutional standing, the 'person invoking the power of a federal court must' 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 553 (8th Cir. 2015) (quoting *Hollingsworth v. Perry*, ___ U.S. ___, ___, 133 S. Ct. 2652, 2661 (2013)). When, as here, a party presents a facial challenge to standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal on the basis of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## V.  FACTUAL BACKGROUND

Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, the relevant facts are as follows:

### A.  The Ordinance

In 2009, the City enacted Chapter 7.10, entitled "Pit Bulls Prohibited" ("Ordinance"). *See* Sioux City, Iowa Code of Ordinances § 7.10. Under the Ordinance, it is "unlawful for any person to own, possess, keep, exercise control over, maintain, harbor, transport or sell within the City . . . any pit bull." *Id.* § 7.10.030. The Ordinance defines a pit bull as:

> [A]ny dog that is an American Pit Bull Terrier, American
> Staffordshire Terrier, Staffordshire Bull Terrier, or any dog
> which has the appearance and characteristics of being

predominantly of the breeds of Staffordshire Terrier, American Pit Bull Terrier or American Staffordshire Terrier as set forth in the standards established by the American Kennel Club or United Kennel Club for any of the aforementioned breeds.

*Id.* § 7.10.010.

Under the Ordinance, the "poundmaster of the City . . . is authorized to immediately impound any pit bull found in the City . . . that does not fall within one of the exceptions contained in [§] 7.10.040." *Id.* § 7.10.050.[1] If the owner of a dog impounded under the ordinance "disputes the classification of the animal as a pit bull . . . the owner of the pit bull may file a written request for a hearing with the City Manager or the City Manager's designee within seven . . . calendar days after impoundment." *Id.* "The poundmaster shall bear the burden of proof to show the dog is a pit bull, as defined in [§] 7.10.010, by clear, convincing, and satisfactory evidence." *Id.* The City Manager or the City Manager's designee acts as the hearing officer. *Id.* "At the conclusion of the hearing or within seven days thereafter the hearing officer shall render a written decision. The findings of the [hearing officer] shall be conclusive." *Id.* An owner who disputes this decision "may notify the City Manager's office" within seven days. *Id.* "The owner will then be issued a Municipal Infraction citation with a court date listed." *Id.*

After a final decision is made, the dog will be transferred or destroyed unless the "owner of the pit bull produces evidence sufficient by the poundmaster that the pit bull is to be permanently taken out of Sioux City, and the owner pays the cost of impoundment." *Id.* The Ordinance also provides for potential fines or jail time for violators. *Id.* § 1.04.100.

---

[1] The court notes that the procedure for disputing a decision, laid out in § 7.10.050, has changed substantially between the time the Motion was briefed and now. *Compare* Exh. 3 to the Resistance at 11 (docket no. 26-3), *with* Sioux City, Iowa Code of Ordinances § 7.10.050. This revised procedure may affect the viability of Plaintiffs' procedural due process claim.

### B. Plaintiffs

Plaintiffs are individuals residing in Sioux City, Iowa, at all relevant times.

#### 1. Kali Myers

In October 2012, Myers obtained her dog, Tink. Tink was a mixed-breed, identified by her veterinarian as a boxer mix. Amended Complaint ¶ 21. Tink never bit, harmed or otherwise acted aggressively toward any person. *Id.* ¶ 22. In mid-2013, Tink escaped from Myers's residence and was picked up by animal control. *Id.* ¶ 23. Animal control released Tink back to Myers without any indication that Tink may be subject to the Ordinance. *Id.* ¶ 24. In Autumn of 2015, while being watched by Myers's father, Tink again escaped and was picked up by animal control. *Id.* ¶ 25.

When Myers's father attempted to recover Tink, he was informed the dog was subject to the Ordinance. *Id.* ¶ 26. Myers provided animal control with documentation stating that Tink was a boxer mix, but animal control refused to release Tink. *Id.* ¶ 27. Myers could not find a home for Tink outside of City limits and, as such, animal control informed Myers that Tink would be euthanized. *Id.* ¶ 29. Myers was never informed that she could contest animal control's decision, and she never did contest its decision. *Id.* ¶ 31.

In March 2016, Myers obtained Radar, a mixed-breed dog. *Id.* ¶ 32. Radar has not bitten, threatened or otherwise acted aggressively toward any person. *Id.* ¶ 33. On or about October 25, 2016, Radar escaped Myers's home and was picked up by animal control. *Id.* ¶ 38. Animal control determined that Radar was subject to the Ordinance, and Myers subsequently found a home for Radar outside of the City. *Id.* ¶¶ 38-40. Myers was never informed that she could contest animal control's decision, and she never did contest its decision. *Id.* ¶ 42.

## 2.    Jennifer Frost

In November 2006, Frost obtained Jake, a purebred Staffordshire Bull Terrier. *Id.* ¶ 43. Jake has never bitten, harmed or otherwise acted aggressively toward any person. *Id.* ¶ 44. In Spring of 2016, animal control picked up Jake two blocks from Frost's home. *Id.* ¶ 45. Animal control checked the microchip implanted underneath Jake's skin and learned he was a Staffordshire Bull Terrier. *Id.* ¶ 46. Animal control informed Frost that Jake was subject to the Ordinance, and Frost was forced to relocate Jake to family members living in New York state. *Id.* ¶¶ 47-49.

In November 2014, Frost obtained Reba, a mixed-breed dog. *Id.* ¶ 50. Reba has never bitten, harmed or otherwise acted aggressively toward any person. *Id.* ¶ 51. As a result of actions taken against Jake, Frost is concerned that Reba will be subject to the Ordinance. *Id.* ¶ 52.

## 3.    Jane Doe[2]

Jane Doe is familiar with Frost and her former dog, Jake. *Id.* ¶ 53. Doe's mixed-breed dog "Daisy" is visually similar to Jake. *Id.* ¶ 54. Daisy has never bitten, harmed or otherwise acted aggressively toward any person. *Id.* ¶ 55. Doe is concerned that Daisy could face impoundment, relocation or euthanasia under the Ordinance due to her visual similarity to Jake. *Id.* ¶ 56.

## C.  Plaintiffs' Claims

As a result of their interactions with the Ordinance, Plaintiffs brought a "civil rights action for declaratory and injunctive relief arising under 42 U.S.C §§ 1983 and 1988, 28 U.S.C. § 2201, and the laws of the State of Iowa." *Id.* ¶ 1. Plaintiffs allege that the Ordinance is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment because it: (1) is unconstitutionally vague; (2) violates their rights

---

[2] Plaintiff Jane Doe proceeds under a pseudonym for herself and her dog, "Daisy." Doe has filed a Motion for Leave to Proceed Under Pseudonym (docket no. 27).

under the equal protection clause; and (3) violates their rights under the due process clause, both in substance and procedure. *See* Amended Complaint ¶¶ 74-93. "Plaintiffs are not asking the [c]ourt to determine whether their dogs are prohibited under the [Ordinance]." Resistance at 11. Rather, Plaintiffs request that the court declare the Ordinance unconstitutional. *Id.* at 12. Accordingly, the court will treat Plaintiffs' claims as a facial challenge to the ordinance and analyze it as such.

## VI.  ANALYSIS

In the Motion, Defendants argue that: (1) all Plaintiffs lack standing to bring their claims; (2) all Plaintiffs lack standing to bring a due process claim; (3) Myers's claims are moot; (4) all Plaintiffs fail to state claims upon which relief can be granted; and (5) alternatively, the court should abstain from this case. Motion at 2-3.[3]

### A.  Standing of Plaintiffs

#### 1.    Parties' arguments

Defendants contend that: (1) Plaintiffs have not established injury in fact; (2) a decision in Plaintiffs favor will not redress their injury; and (3) Doe's claims are not ripe. Plaintiffs argue that: (1) they have established injury in fact; (2) a decision will redress their injury; and (3) Doe's claims are ripe.

#### 2.    Applicable law

The doctrine of standing ensures that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "[T]he

---

[3] Defendants' Motion also requests that Defendant Robert Padmore be dismissed because Plaintiffs failed to allege specific actions taken by Padmore and because Plaintiffs failed to exhaust their administrative remedies. *See* Motion at 3-4. Defendants have not briefed this issue or provided any case law supporting their claim that Padmore should be dismissed and the court is aware of none. Accordingly, the court shall deny the Motion to the extent it argues that Padmore should be dismissed.

irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent . . . .'" *Id.* (citations omitted); *see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 959 (8th Cir. 2011) (same). Second, the injury and the conduct at issue must be casually connected. *See Lujan*, 504 U.S. at 560. Finally, a decision in the plaintiff's favor "must be 'likely,'" to redress the injury. *Id.* at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)). "[T]he party invoking federal jurisdiction bears the burden of establishing [the] elements" of standing. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (first alteration in original) (quoting *Lujan*, 504 U.S. at 561). These requirements are "an indispensable part of the plaintiff's case," and the plaintiff must support each element "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Lujan*, 504 U.S. at 561). Therefore, for purposes of a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for . . . [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (second alteration in original) (internal quotation marks and citations omitted) (quoting *Lujan*, 504 U.S. at 561).

### 3. *Injury in fact*

Defendants argue that Plaintiffs did not suffer an injury in fact for two reasons: (1) Frost and Doe have not alleged facts establishing that Reba or Daisy are subject to the Ordinance; and (2) Frost and Myers's dogs were not "property" when taken. *See* Brief in Support of the Motion at 8-10.

#### a. *Subject to ordinance*

Defendants' argue that Frost and Doe have not established that their respective dogs, Reba and Daisy, would be subject to the Ordinance and, therefore, that they have

not established an injury in fact. Specifically, Defendants contend that Plaintiffs have not alleged facts "that should reasonably lead the [c]ourt to believe, or put the City properly on notice, that either of these dogs *could* meet the City's definition of 'pit bull'" or that they are otherwise subject to the Ordinance. Brief in Support of Motion at 8. Frost and Doe argue that they have pleaded sufficient facts to establish an injury in fact. *See* Resistance at 5-7.

At the pleading stage, a plaintiff must allege an injury in fact to "ensure that the plaintiff[s] ha[ve] a 'personal stake in the outcome of the controversy.'" *Susan B. Anothny List v. Driehaus*, ___ U.S. ___, ___, 134 S. Ct. 2334, 2341 (2014). As the Supreme Court explains, "[a]n injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Id.* (internal citations and quotations omitted). When a person is subject to the threatened enforcement of a law, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.* at 2342.

Rather, the person subject to threatened enforcement of a law may challenge such law "under circumstances that render the threatened enforcement sufficiently imminent." *Id.* To qualify as sufficiently imminent, the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)); *see also Gray v. City of Valley Park*, 567 F.3d 976, 984 (8th Cir. 2009) ("Plaintiffs have standing to challenge the facial validity of a regulation notwithstanding the pre-enforcement nature of a lawsuit, where the impact of the regulation is direct and immediate and they allege an actual, well-founded fear that the law will be enforced against them.").

Frost and Doe both allege that their dogs are mixed-breed dogs and, therefore, that they reasonably fear their dogs could be subjected to the Ordinance. *See* Amended Complaint ¶¶ 52, 56. The predominant appearance and characteristics test of § 7.10.010 of the Ordinance has been applied by the City against mixed-breed dogs. *See id.* ¶¶ 21-42 (discussing Myers's mixed-breed dogs Tink and Radar); Sioux City, Iowa Code of Ordinances § 7.10.010 (noting that dogs which have the "appearance and characteristics" of the enumerated breeds qualify as pit bulls). Frost specifically states that, as a result of the actions taken against her former dog, Jake, under the Ordinance, she has a reasonable fear that similar action could be taken against her current dog, Reba. *See* Amended Complaint ¶ 52. Similarly, Doe alleges that she was familiar with Jake, that Daisy "is visually similar to" Jake and, therefore, that Daisy could be subject to the Ordinance. *Id.* ¶ 54. Frost and Doe have both alleged facts, taken as true, that tend to prove a credible threat of prosecution due to the similarities to a dog which was subjected to the Ordinance. Accordingly, the court finds that both Frost and Doe have alleged a credible threat of future prosecution that is sufficient to establish the injury-in-fact requirement at this stage. *See also Farm-to-Consumer Legal Def. Fund v. Sebelius*, 734 F. Supp. 2d 668, 687 (N.D. Iowa 2010) (noting that "plaintiffs have standing to challenge the *facial* validity of a regulation notwithstanding the pre-enforcement nature of a lawsuit, where the impact of the regulation is direct and immediate and they allege an actual, well-founded fear that the law will be enforced against them").

### b. Dogs are property

Defendants contend that Frost and Myers cannot clear the injury in fact hurdle of standing because Jake, Tink and Radar cannot be considered "property" under Iowa law. *See* Brief in Support of Motion at 8-10. Defendants rely on Iowa Code § 351.25, which states:

> All dogs under six months of age, and all dogs over said age
> and wearing a collar with a valid rabies vaccination tag

> attached to the collar, shall be deemed property. Dogs not
> provided with a rabies vaccination tag shall not be deemed
> property.

Defendants argue that, because each of these dogs was over six months old and not wearing a rabies tag when they were picked up by animal control, they cannot be considered property. *See* Brief in Support of Motion at 9. As such, Defendants contend that Frost and Myers were not harmed because neither was "deprived of property under the Fourteenth Amendment." *Id.* Finally, Defendants argue that Myers lacks standing because she no longer owns Tink or Radar, as she transferred ownership of the dogs when she was forced to relocate them outside the City. *Id.* In response, Plaintiffs argue that the dogs are property for purposes of the Fourteenth Amendment. *See* Resistance at 7-9.

The court disagrees with Defendants' contention that Jake, Tink and Radar cannot be considered property due to Iowa Code § 351.25. The Iowa Supreme Court acknowledged that Iowa Code § 351.25 "applies only to the licensing and regulatory provisions of chapter 351" when holding that "a dog plainly may be the subject of larceny whether licensed or not." *Sisler v. City of Centerville*, 372 N.W.2d 248, 253 (Iowa 1985). Similarly, cases from within the Eighth Circuit involving Fourth and Fourteenth Amendment claims have continually treated dogs as property. *See Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006) ("A dog is considered property for Fourth Amendment purposes."); *Folkers v. City of Waterloo*, 582 F. Supp. 2d 1141, 1150, 1152-53 (N.D. Iowa 2008) (treating dogs as property for Fourth and Fourteenth Amendment purposes). Because the Iowa Supreme Court explicitly stated that dogs may be treated as property for purposes of larceny and the only authority on which Defendants rely applies only for purposes of licensing and regulatory activity, the court shall deny the motion on these grounds.

The court similarly rejects Defendants' contention that, because Myers no longer owns Radar or Tink, she does not have standing. Myers had a property interest in the

dogs at the time they were subjected to removal under the Ordinance and suffered an injury in fact when they were seized. Whether Myers's transfer of ownership makes the case moot will be addressed below.[4]

### 4. *Favorably redress the injury*

Defendants also contend that Plaintiffs' injuries would not be redressed by a favorable decision. "When government action is challenged by a party who is a target or object of the government's action . . . not only is there ordinarily little question that the government's action or regulation has caused that person injury, but little question that the judicial action will redress it." *Farm-to-Consumer Legal Def. Fund*, 734 F. Supp. 2d at 689 (citing *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 958 (8th Cir. 2009)). In this case, Frost and Doe are concerned that Reba and Daisy, respectively, may be subjected to the Ordinance. Further, Frost and Myers have previously had dogs taken away through enforcement of the Ordinance. Plaintiffs claim that the Ordinance is unconstitutional and seek an injunction preventing the City or its agents from enforcing the Ordinance. Plaintiffs assert that their injuries would be redressed by allowing Plaintiffs to own pure bred or mixed-breed dogs potentially subject to the Ordinance without fear of repercussion. The court agrees. A judicial declaration that the Ordinance is unconstitutional would allow Myers to re-obtain ownership of her dogs, Frost to re-obtain ownership of Jake and Frost and Doe to own Reba and Daisy, respectively, without fear of being prosecuted.

---

[4] Defendants also argue that Frost and Myers "lack standing to challenge the ordinance for vagueness, because Frost's dog Jake was admittedly a Staffordshire Bull Terrier prohibited by the Ordinance . . . [and] Myers'[s] dogs Tink and Radar were admittedly pit bulls prohibited by the Ordinance." Brief in Support of Motion at 10. While Jake was admittedly a Staffordshire Bull Terrier, Frost still has standing with respect to Reba—a mixed-breed dog. Myers has standing because the court cannot find at this time that Myers signing the stock "Animal Removal, Indemnification and Hold Harmless Agreement" form—one of which was signed by her father—so that Tink and Radar could be transferred rather than euthanized, establishes that her mixed-breed dogs were "admittedly pit bulls." *See* App'x to Motion at 2, 5 (docket no 23-4).

Accordingly, the court shall deny the motion with respect to redressability.

### 5.    Ripeness

Defendants argue that Doe's claims are not ripe.  *See* Brief in Support of Motion at 12.  "[T]he ripeness inquiry requires the examination of both 'the fitness of the issues for judicial decision and the hardship of the parties of withholding court consideration.'" *Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 572-73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  The party seeking to have a claim adjudicated "must necessarily satisfy both prongs to at least a minimal degree." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000). "Whether a case is 'fit' depends on whether it would benefit from further factual development." *Pub. Water Supply*, 345 F.3d at 573.  To establish hardship, a plaintiff must allege that he or she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Here, Doe's claims are ripe for adjudication because no additional factual development would benefit the case.  As discussed above, Plaintiffs are challenging whether the Ordinance is constitutional, a purely legal question that would not "benefit from further factual development." *Id.* (stating that a "case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities").  To establish hardship, Doe "need not wait until the threatened injury occurs, but the injury must be 'certainly impending.'" *Id.* (quoting *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958-59 (8th Cir. 2001)); *see also Farm-to-Consumer Legal Defense Fund*, 734 F. Supp. 2d at 694-95 (stating that plaintiffs need not "be subjected to an actual enforcement action for their claims to be ripe, or no pre-enforcement challenge would ever be ripe").  Here, as the court discussed above, Doe has sufficiently alleged that Daisy could be subject to the Ordinance.  There is no dispute that the City has enforced the

Ordinance against mixed-breed dogs in the past under the predominant appearance and characteristics test. *See* Amended Complaint ¶¶ 21-42 (discussing Myers's mixed-breed dogs Tink and Radar). This is sufficient to establish hardship. Accordingly, the court shall deny the Motion to Dismiss to the extent that Defendants argue that Doe's claims are not ripe for adjudication.

### 6. Standing established

The court finds that: (1) Plaintiffs have established injury in fact; (2) a decision will redress Plaintiffs' alleged injuries; and (3) Doe's claims are ripe. Accordingly, the court shall deny the Motion with respect to the argument that Plaintiffs lack standing.

## B. Procedural Due Process Claim Standing

Defendants argue that Plaintiffs lack standing to bring procedural due process claims because "no Plaintiff has availed herself of [§ 7.10.050's] procedures." Brief in Support of Motion at 10. Contrary to Defendants' position, the Eighth Circuit has found that "determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 993 (8th Cir. 2016). Accordingly, "allegations that the procedure is inadequate—even if [plaintiffs] shun it—sufficiently establishes an injury in fact for Article III standing." *Id.* at 994. In this case, Plaintiffs allege that the procedure for contesting animal control's decision that a dog is subject to the Ordinance is deficient. *See* Amended Complaint ¶¶ 82-91. Defendants have offered no legal argument contradicting this established Eighth Circuit precedent. Accordingly, the court shall deny the Motion with respect to the argument that Plaintiffs lack standing to bring their procedural due process claims.

## C. Mootness of Kali Myers's Claims[5]

Defendants argue that Myers's claims are moot because "Tink and Radar were transferred to other owners, outside Iowa, and Myers no longer holds any ownership interest" in the dogs. Brief in Support of Motion at 13. Plaintiffs respond that Myers seeks to return Tink and Radar to her home—or acquire a similar dog that is subject to the Ordinance—if the Ordinance is found unconstitutional. *See* Resistance at 13.

"A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Doe v. Nixon*, 716 F.3d 1041, 1051 (8th Cir. 2013) (quoting *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004)); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (alteration in original) (internal quotation marks omitted) (quoting *United States v. Concentrated Phosphate Export Ass'n.*, 393 U.S. 199, 203 (1968))). "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (alteration in original) (internal quotation omitted) (quoting *Haden v. Pelofsky*,

---

[5] Defendants also argue that Frost's claims are moot because "the City has determined [that] Reba is not a pit bull, thus relief would be meaningless." Brief in Support of Motion at 13. The City's "determination" that Reba is not a pit bull has no binding effect on the City, nor does it prevent future enforcement of the Ordinance against Reba. Therefore, the court shall deny the Motion to the extent it seeks to dismiss Frost because her claims are moot.

212 F.3d 466, 469 (8th Cir. 2000)).

Here, Defendants have not met their heavy burden of showing that the court cannot "grant effective relief" in this case. *Id.* In this case, Myers has alleged that the Ordinance was enforced on two separate occasions against dogs owned by her. Further, Myers initially instituted this case after Tink had been taken but before Radar was taken. Under these facts, it is reasonable to infer that Myers seeks to return Tink or Radar to her home, or acquire dogs that are subject to the ordinance. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (noting "the familiar axiom that on a motion to dismiss, inferences are to be drawn in favor of the non-moving party"). Finally, the court would grant effective relief to Myer if it ruled that the Ordinance was unconstitutional and entered an injunction preventing its enforcement as Plaintiffs request.

Accordingly, the court shall deny the Motion to Dismiss to the extent it seeks to dismiss Myers's claims as moot.

### D. Failure to State a Claim for Which Relief Can Be Granted

Defendants argue that Plaintiffs have not stated a claim for which relief can be granted because Plaintiffs: (1) fail to state a claim for a substantive due process violation; (2) fail to state a claim for an equal protection violation; and (3) fail to state a claim for unconstitutional vagueness.[6] *See* Brief in Support of Motion at 14-16. Plaintiffs argue that they: (1) have stated a claim for a substantive due process violation; (2) have stated a claim for an equal protection violation; and (3) have stated a claim for unconstitutional vagueness. *See* Resistance at 13-17.

#### 1. Substantive due process

##### a. Applicable law

When a fundamental right is not at issue, courts apply a rational basis test, asking

---

[6] Defendants' Motion does not challenge Plaintiffs' procedural due process claim on 12(b)(6) grounds, and, therefore, the court does not address such challenge.

whether there is "a 'reasonable fit' between [the] governmental purpose . . . and the means chosen to advance that purpose." *Reno v. Flores*, 507 U.S. 292, 305 (1993); *see also Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012) ("Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest."). In this case, Defendants argue that "Plaintiffs allege no violations of fundamental rights" and, "[t]hus, the [O]rdinance need only be rationally related to a legitimate governmental interest." Brief in Support of the Motion at 14. Plaintiffs argue that they have alleged facts that are "more than sufficient to support a substantive due process claim because [the facts] show[] that the law bears no rational relationship to any legitimate state interest." Resistance at 14; *see also* Amended Complaint ¶ 78 (same). Since both parties applied the rational basis test and this court finds no authority suggesting that dog ownership is a fundamental liberty interest, the court will do the same.

### b. Analysis

Plaintiffs have stated a claim for substantive due process sufficient to survive Defendants' 12(b)(6) challenge. The City has a legitimate government interest in protecting the health and safety of the public by enacting animal control ordinances. *See, e.g.*, *Dias v. City and Cty of Denver*, 567 F.3d 1169, 1183 (10th Cir. 2009) ("It is uncontested that [the city] has a legitimate interest in animal control—the protection of health and safety of the public."). Plaintiffs, however, contend that the Ordinance is an irrational means of furthering the City's legitimate interests. In support, Plaintiffs allege that "there is no scientific or epidemiological basis" for claims that "certain breeds of dogs are thought to be a greater risk to bite humans than other breeds of dogs." Amended Complaint ¶ 62. Plaintiffs point to statements from the American Veterinary Medical Association and Humane Society of the United States as proof that "there is no evidence to support the belief that breed-specific legislation such as [the] Ordinance actually reduces

dog bites or attacks on people." Resistance at 13-14; *see also* Amended Complaint ¶¶ 62-67 (same). Finally, Plaintiffs argue the Ordinance's "appearance and characteristics" provision will result in the City "wrongly classify[ing] many dogs as illegal." Resistance at 14. Plaintiffs contend that these issues make the Ordinance irrational.

Accepting Plaintiffs' factual allegations as true, the court cannot conclude at the motion to dismiss stage that the Ordinance was rational as a matter of law. The Tenth Circuit has addressed a similar challenge to an ordinance prohibiting pit bull ownership. *See Dias*, 567 F.3d at 1183. In *Dias*, the plaintiffs argued that "there is a lack of evidence that pit bulls as a breed pose a threat to public safety or constitute a public nuisance, and thus, that it is irrational for [a city] to enact a breed-specific prohibition." *Id.* The Tenth Circuit found that the plaintiffs' allegations were sufficient to survive a 12(b)(6) challenge and stated:

> We have no occasion to pass upon the ultimate merit of plaintiffs' substantive due process challenge; that is not our role at this juncture. We are constrained to deciding if the complaint alleges facts sufficient to state a claim for relief. Whether the plaintiffs can marshal enough evidence to prevail on the merits of their claim that the Ordinance is irrational is a different matter entirely. But at the 12(b)(6) stage, we must assume that they can, even if it strikes us "that a recovery is very remote and unlikely."

*Id.* at 1184 (quoting *Twombly*, 550 U.S. at 556). The court finds this reasoning persuasive. Plaintiffs have made factual allegations that, when taken as true, are sufficient to survive Defendants' 12(b)(6) challenge because they suggest that a rational basis between the City's interest in safety and the Ordinance is lacking. The court is skeptical that Plaintiffs will be able to ultimately clear the high hurdle set by the rational basis test. That, however, is an issue for a later stage of the case. Accordingly, the court shall deny the Motion to the extent it argues that Plaintiffs fail to state a claim for substantive due process.

## 2. *Equal protection*

Defendants argue that "Plaintiffs make no specific Equal Protection allegation involving any fact related to them." Brief in Support of Motion at 15-16. Defendants further state that Plaintiffs' "allegations consist of nonspecific, conclusory legal terms, and do not allege any act by Defendants as a cognizable Equal Protection violation." *Id.* at 16. Plaintiffs argue that "there is no rational basis for treating owners of the prohibited breeds—or owners of dogs that look like the prohibited breeds—differently than owners of other dogs." Resistance at 14; *see also* Amended Complaint ¶ 79 (same).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (footnotes omitted). When no fundamental right or suspect class is at issue, a challenged law must only be "rationally related to a legitimate state interest." *Pennell v. City of San Jose*, 485 U.S. 1, 14 (1988) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) (internal quotation marks omitted). A court will uphold a statute on rational basis review "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." *Id.* (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).

Since Plaintiffs' Amended Complaint does not establish that the Plaintiffs are part of a suspect class, *see* Amended Complaint ¶ 79, the court applies rational basis analysis. As discussed, Plaintiffs' Amended Complaint alleges facts that, when taken as true, are

sufficient to survive rational basis scrutiny at this stage. *See* Part VI.D.1.b *supra*. Any skepticism the court has about Plaintiffs' claims is an issue for a later stage of the case. Accordingly, the court shall deny the Motion to the extent it argues that Plaintiffs fail to state a claim for equal protection.

### 3. Vagueness

#### a. Parties' arguments

Plaintiffs contend that § 7.10.010—which identifies "the animals subject to the ban"—is "unconstitutionally vague because it fails to let Plaintiffs know whether their mixed-breed dogs are prohibited." Resistance at 15. The Ordinance defines a pit bull as:

> [A]ny dog that is an American Pit Bull Terrier, American Staffordshire Terrier, Staffordshire Bull Terrier, or any dog which has the appearance and characteristics of being predominantly of the breeds of Staffordshire Terrier, American Pit Bull Terrier or American Staffordshire Terrier as set forth in the standards established by the American Kennel Club or United Kennel Club for any of the aforementioned breeds.

Sioux City, Iowa Code of Ordinances § 7.10.010. Defendants argue that this section is not vague because it "specifies objective standards against which a dog would be evaluated and which are available for reference." Brief in Support of Motion at 16 (citation omitted). Plaintiffs respond that the predominant appearance definition used by the Ordinance is "highly subjective, impressionistic, and not easily applied." Resistance at 15. Finally, Plaintiffs warn that the subjective nature of the standard allows officers "to determine on a whim whether a particular dog meets" the standard, which could result in biased and arbitrary enforcement of the Ordinance. *Id.* at 16-17.

#### b. Applicable law

A vague statute "'violates the first essential of due process of law,' because citizens 'must necessarily guess at its meaning and differ as to its application.'" *United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269

U.S. 385, 391 (1926)). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). However, "[f]acial challenges are strong medicine." *Dias*, 567 F.3d at 1179 (quoting *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005)). As such, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).

### c. *Analysis*

The court finds that Section 7.10.010 of the Ordinance is not unconstitutionally vague. The Ordinance states that American Pit Bull Terriers, American Staffordshire Terriers and Staffordshire Bull Terriers and dogs with the "appearance and characteristics of being predominately" of those breeds "as set forth in the standards established by the American Kennel Club ["AKC"] or United Kennel Club ["UKC"]" are subject to the Ordinance. Sioux City, Iowa Code of Ordinances § 7.10.010. The AKC and UKC standards provide specific information regarding characteristics of the prohibited breeds. Accordingly, citizens are provided with clear standards regarding what dogs are subject to the Ordinance.

The majority of courts reviewing animal control ordinances that specifically identify the breeds subject to the ordinance—like the Ordinance in this case does—have rejected vagueness challenges. *See* 3B C.J.S. Animals § 19 (2017) ("Ordinances identifying the American Pit Bull Terrier, Staffordshire Bull Terrier, and American Staffordshire Terrier as 'pit bulls,' or any dog with the appearance and characteristics of being predominantly Staffordshire Bull Terrier, American Pit Bull Terrier, or American Staffordshire Terrier,

as well as dogs 'identifiable' as having any 'pit bull' variety as an element of their breeding, are not unconstitutionally vague." (footnotes omitted)). In *Dias*, the Tenth Circuit upheld the dismissal of the plaintiffs' facial vagueness challenge to the ordinance, which similarly defined a pit bull as:

> any dog that is an American Pit Bull Terrier, American Staffordshire Terrier, Staffordshire Bull Terrier, or any dog displaying the majority of physical traits of any one (1) or more of the above breeds, or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the [AKC] or [UKC] for any of the above breeds

*Dias*, 567 F.3d at 1173, 1180. The Tenth Circuit held that the ordinance "is sufficiently definite such that it does not encourage arbitrary enforcement with respect to registered pure breeds" and, therefore, is not "vague in all of its applications." *Id.* at 1179 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)). The court finds that these sources are persuasive and that the Ordinance is sufficiently definite to defeat Plaintiffs' facial vagueness challenge. Accordingly, the court shall grant the Motion to Dismiss to the extent it argues that Plaintiffs fail to state a claim for unconstitutional vagueness.

## E. Abstention

### 1. Parties' arguments

In the alternative, Defendants request that the court abstain from exercising its jurisdiction in this case. Defendants contend that abstention is proper because: (1) Plaintiffs can assert the same claims in state court; (2) state remedies, including the administrative remedies in the ordinance, were available to Plaintiffs; (3) it is unclear under Iowa law whether Plaintiffs' dogs can be considered property; and (4) the validity of the Ordinance should be left to the state courts as it "involv[es] issues of extreme local concern and . . . substantial public importance." Brief in Support of Motion at 18-19.

### 2. Applicable law

Defendants do not clearly state which type of abstention they seek, but seemingly rely on the standard announced in *R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496 (1941). "*Pullman* requires a federal court to refrain from exercising jurisdiction when the case involves a potentially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially alter the need for a decision on federal constitutional grounds." *Burris v. Cobb*, 808 F.3d 386, 388 (8th Cir. 2015) (quoting *Moe v. Brookings Cty.*, 659 F.2d 880, 883 (8th Cir. 1981)).[7] The nature of Plaintiffs' claims weigh strongly against abstention. *See Ass'n for Retarded Citizens of N. Dakota v. Olson*, 713 F.2d 1384, 1391 (8th Cir. 1983) ("Cases involving questions of civil rights are the least likely candidate for abstention."); *George*, 602 F.2d at 820 (stating that "federal courts have refused to abstain in suits for injunctive relief against state laws or actions which impinge upon the exercise of established constitutional rights").

### 3. Analysis

Defendants' focus on whether Plaintiffs could have brought the case in state court misses the mark. The key issue for *Pullman* abstention is whether the statute is ambiguous and could be interpreted by a state court in a way that would avoid the constitutional issue. *See Burris*, 808 F.3d at 388. "*Pullman* abstention is limited to uncertain questions of state law because '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (alteration in original) (quoting *Colorado River Water Conservation Distr. v. United States*, 424 U.S. 800, 813 (1976)). The Supreme Court has "frequently emphasized that abstention is not to be

---

[7] When determining whether to abstain, the court generally considers: (1) the effect abstention will have on the protected rights; (2) whether there are state remedies available to the plaintiffs; (3) whether the law is unclear; and (4) if abstention will avoid unnecessary federal interference in state operations. *See George v. Parratt*, 602 F.2d 818, 819-22 (8th Cir. 1979).

ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." *Id.* (quoting *Zwickler v. Koota*, 389 U.S. 241, 251 n.14 (1967)).

The Ordinance is not ambiguous or clearly susceptible to a limiting construction. Rather, as discussed above, the Ordinance is sufficiently clear to whom it applies and how it will be applied. Further, the Iowa Supreme Court has reviewed and upheld the constitutionality of a similar ordinance—making it clear how Iowa courts would address an issue such as this. *See Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416 (Iowa 1991). Finally, Iowa and Eighth Circuit precedent establishes that dogs should be considered property for purposes of the Fourteenth Amendment, voiding Defendants' argument that this area of law is unclear. *See Sisler*, 372 N.W.2d at 253; *Andrews*, 454 F.3d at 918; *Folkers*, 582 F. Supp. 2d at 1150, 1152-53. "Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Moe v. Boorkings Cty., S.D.*, 659 F.2d 880, 883 (8th Cir. 1981) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971)).

Accordingly, the court finds that, "[b]ecause there is no ambiguity and thus no unsettled question of state law, *Pullman* abstention is not appropriate here." *Burris*, 808 F.3d at 388.

## VII. CONCLUSION

In light of the foregoing. Defendants' Motion to Dismiss (docket no. 23) is **DENIED** in part and **GRANTED** in part. Plaintiffs' claim that the Ordinance is unconstitutionally vague is hereby **DISMISSED**. Plaintiffs may proceed with their remaining equal protection clause and due process clause claims.

**IT IS SO ORDERED.**

**DATED** this 18th day of September, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA